**No. 14-17175**

_____

**UNITED STATES COURTS OF APPEALS
FOR THE NINTH CIRCUIT**

_____


STEVE WILSON BRIGGS

*Plaintiff-Appellant*

v.

SONY PICTURES ENTERTAINMENT, INC., NEILL BLOMKAMP, ET AL

*Defendants-Appellee*

_____

On Appeal from the United States District Court
for the Northern District of California

Hon. Judge Phyllis J. Hamilton

_____

**SUBSTITUTE-CORRECTED BRIEF
OF APPELLANT STEVE WILSON BRIGGS**

_____

Steve Wilson Briggs
681 Edna Way
San Mateo, CA 94402
(510) 200 3763
Snc.steve@gmail.com


*Appellant In Propria Persona*

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………..i

TABLE OF AUTHORITIES………………………………………………...iii

INTRODUCTION……………………………………………..…………… .1

STATEMENT OF JURISDICTION………………………...…………….. .3

STATEMENT OF ISSUES PRESENTED FOR REVIEW………..…………….. .4

STATEMENT OF THE CASE………………………………………….....4

SUMMARY OF ARGUMENT…………………………………………… 8

    A. The Appellee/Defendant's Position…..…………………………… .8

    B. The Appellant/Plaintiff's Position……..……………………….....9

        Access………………..………………………………..11

        Widespread Dissemination…..…………………………11

STANDARD OF REVIEW (General)……………………………………13

ARGUMENT……………………………………………………………..13

    1. THE COURT'S ACCESS RULING ERRS AS IT FAILED TO APPLY
       ACCESS STANDARDS FROM *L.A. PRINTEX V. AEROPOSTALE*
       (9TH CIR, 2012) AND RELIES ON REVERSED CASE LAW, AND
       HOLDS PLAINTIFF TO A SEPARATE STANDARD.…………...……….13

    2. THE COURT ERRED IN ITS SUBSTANTIAL SIMILARITY TEST;
       BY OMITTING *L.A. PRINTEX* THE COURT FAILED TO TEST
       "OBEJECTIVE SIMILARITIES IN PROTECTIBLE ELEMENTS"
       & FAILED TO GIVE PLAINTIFF "BROAD" PROTECTION. ………..17

*3.* THE COURT ERRED IN USING DISSECTION ANALYSIS, (DISCREDITED BY L.A. PRINTEX); THUS, FAILED TO ANALYZE OBJECTIVE SIMILARITIES IN PROTECTABLE ELEMENTS**.**…..……20

4. THE ORDER ERRS AS IT IS PREDICATED ON THE OMISSION & MISTATEMENT OF CENTRAL FACTS & CLAIMS…………………...21

5. THE COURT ERRED IN NOT CHOOSING A CASE LAW STANDARD TO DEFINE "STRIKING SIMILARITY"……………...….24

6. THE COURT ERRED IN ITS DIRECT COMPARISON RULING…...…25

7. THE ORDER ERRS AS IT DID NOT TEST FOR "STRIKING SIMILARITY"…………………………………..…………………26

8. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THE CREDIBILITY OF THE PARTIES IS AT ISSUE…………………..27

9. THE ORDER ERRS AS THE COURT MISUSED ITS DISCRETION AND PREJUDICIALLY RULED AGAINST PLAINTIFF……..…………27

SUMMARY……………………………………………………………….29

CONCLUSION…………..……………………………………………..30

# TABLE OF AUTHORITIES

**Cases**

*L.A. Printex Indus. Inc. v Aeropostale, Inc.,*
102 U.S.P.Q.2nd (BNA)(9th Cir 2012)…………...……...1, 9, 10, 11, 13, 14, 16, 17

      (continued)………………………………….........18,19, 20, 21, 26, 27, 30

*Ty Inc. v. GMA Accessories, Inc.* (132 F.3d 1167, 7th Cir.1997)…..………2, 24, 25

*Selle v. Gibb*…………………………………….………………………4, 24, 25

*Archer Dick Coelho v. MRC Distribution Company, L.P. et al*..............................5

*Funky Films v. Universal Films*…………………………………………………8

*Grosso v. Miramax Film Corp.,* 383 F.3d, (2003).………………………………...9

*Metcalf v. Bochco*, (9th Cir. 2002)……………………………………………9

*Shaw v. Lindheim* (9th Cir. 1990)..………………………………….………9, 27

*Padfield v. AIG Life Ins. Co.,*
290 F.3d 1121, 1124 (9th Cir. 2002)….…………………………………………..13

*American Civil Liberties Union of Nevada v. City of Las Vegas,*
333 F.3d 1092, 1097 (9th Cir. 2003)……………………………………………13

*Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir. 1988)………….14, 17

*Three Boys Music v. Bolton* (9th Cir. 2000)……………………………….....14

*Art Attacks Ink, LLC v. MGA Entm't Inc.* (9th Cir. 2009)………………….....14

*CDN, Inc. v. Kapes*, 197 F.3d 1256, 1259 n.1 (9th Cir. 1999)………………..20, 24

*Knitware Inc. v. Lollytogs* Ltd. 71 F.3d 996, 1003 (2d Cir. 1995)……………….21

*Quirk v. Sony Pictures Entertainment, Inc.* 2013 WL 1345075……………..……26

*Walt Disney Productions v. Filmation Associates* 628 F. Supp., 871, (1986)….. 26

*Arnstein v. Porter* 154 F.2d 464 (2d Cir. 1946)………………………………….27

## Statutes

28 U.S.C. §§ 1331, 1338(a) …………………………………………………………..3

28 U.S.C. § 1292(b)………………………………………………………………...3

Fed R. Civ. P, Rule 15……………………………………………………………...6

Copyright Act of 1976……………………………………………………………26

The Ninth Circuit Court of Appeal Manual of Model Jury Instructions…………..15

## Treatises

Patry on Copyright 3...........................................................................................3, 26

Nimmer on Copyright…………………………………………….....4, 9, 10, 24, 25, 30

Ninth's Manual of Model Jury Instructions (Civil)…………………………………15

## INTRODUCTION

Appellant/Plaintiff, Steve Wilson Briggs, brings this copyright infringement matter to the Ninth Circuit, to reverse the district court's summary judgment order, due the court's failure to apply the *access* and *similarity* standards of *L.A. Printex Indus. Inc. v Aeropostale, Inc.,* (9th Cir 2012). Rather, the court applied the very standards that L.A. Printex v. Aeropostale **reversed** (among other failings).

The Plaintiff advised the court of *L.A. Printex* in his motion for summary judgment. [ER 55, 59] Yet, the order omits *L.A. Printex* to cite *reversed* law. *L.A. Printex* established many points, all favoring the Appellant, such as the following.

1. Genuine issues of material fact preclude summary judgment;

2. *Circumstantial evidence* of *widespread dissemination* can prove access;

3. Simple arrangements can garner "broad" protection (the floral prints central to *L.A. Printex* were simple arrangements, yet, received "broad");

4. A work need not be "virtually identical" to infringe;

5. It is not necessary to copy an entire work to infringe, only a substantial portion;

6. A rational jury could find differences *inconsequential*;

7. The 9th Circuit no longer favors dissection analysis (used in this case).

The Appellant/Plaintiff's Amended Complaint details over 100 similarities between his screenplay, *Butterfly Driver,* and Defendants' script and film, *Elysium.* Briefly, the Plaintiff's *Butterfly Driver* is set on an impoverished future Earth,

1

where the hero fights his way to a giant satellite world for the super-rich –for medical aid to save his daughter. The hero suffers brutal headaches that force him to his knees, clutching his head, screaming. In battle with a villain (reprogrammed to live forever) the hero suffers a headache.

The Appellee's **Elysium** is set on an impoverished future Earth, where the hero fights his way to a giant satellite world for the super-rich –for medical aid to save himself <u>and his girlfriend's</u> daughter. The hero suffers brutal headaches that force him to his knees, clutching his head, screaming. In battle with a villain (re-atomized to live forever) the hero suffers a headache.*[1]

The two works share a plot, a unique never-before-used setting (a satellite-for the super-rich, orbiting Earth), a hero with a never-before-used affliction (recurring implosive headaches), a reprogrammed villain, and many, many other aspects. They are similar to each other, yet unlike anything else.

This invites *Ty Inc. v. GMA Accessories, Inc.* (132 F.3d 1167, 7th Cir.1997), where the Court ruled: "Access (and copying) may be inferred when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first..." [ER 76]

---

[1] Defendants' script refers to its 4 headaches as: 1) "<u>migraine</u>" (a headache), 2) "<u>cerebral pain</u>" (a headache), 3) "<u>seizure</u>", 4) "<u>epileptic white static</u>". Yet, the district court ruled the incidents were not headaches but "seizures" –although the Plaintiff's FAC & MFSJ informed the court that: A) <u>no seizure causes sufferers to fall to their knees, grab their head and scream;</u> B) "migraine" is a neuro-disorder characterized by headaches; C) "cerebral pain" is, by definition, a "head-ache".

2

Thus, the burden of proof shifted to the Defense –to show the set of common aspects were publically available. The Defendant could not meet the demand.

Ty is just one of 40 citations in the Plaintiff's motion for summary judgment (MFSJ) <u>not</u> considered by the court –citing the MFSJ only for two "access" points.

The district court order hinged on errors prejudicial to the Plaintiff, such as:

1) The court denied Plaintiff leave to amend, and denied a 120 day continuance of discovery deadlines, denying Plaintiff time and opportunity to add facts, conduct depositions, add parties or submit his declaration.

2) The district court omitted any basic "Striking Similarity" tests, which are:

   **1)** Idiosyncratic elements repeated in the alleged infringing work;
   **2)** The appearance of the same errors or mistakes in both works;
   **3)** Obvious or crude attempts to give the appearance of dissimilarity;
   **4)** Uniqueness, intricacy, or complexity of the similar sections.*[2]

3) The order was based on the Defendants' expert's dissection analysis, a flawed method –which the Ninth Circuit rejected in the *L.A. Printex* ruling.

---

[2] These are 4 of the 5 tests for Striking Similarity from ***Patry on Copyright 3*** (2009, Patry) analyzed and confirmed in the Appellants' MFSJ and FAC.

## STATEMENT OF JURISDICTION

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) as this is an action for copyright infringement. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(b) under which it granted petitions for permission to appeal on November 3, 2014.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether in choosing a **reversed** *access* standard, over the prevailing the standard, the court unfairly raised the access standard from **"reasonable opportunity of access**", to the impossible standard of **"'virtually impossible' in 'human experience'"**.

2. Whether an order predicated on <u>reversed</u> substantial similarity assessment standard and discredited dissection analysis (which cannot and does not compare protectable arrangements or "objective similarities of protectable elements", as <u>required</u> by the Ninth Circuit) can be proper.

3. Whether the court erred in applying a "Striking Similarity" standard that has no genesis in law (coined by Nimmer on Copyright, 2005), **over** established case law standards from *Selle v. Gibb*, and whether there is a precedent risk.

4. Whether an order that omits and misstates key Plaintiff facts, utilizes reversed case law and discredited analysis can yield a valid conclusion.

## STATEMENT OF THE CASE

August 9th, 2013, MRC and Sony Pictures release the film *Elysium*

October 8, 2013, recognizing the film as an infringement of his screenplay, Appellant/Plaintiff files suit against Defendants Neill Blomkamp, Sony Pictures Ent. Inc., Media Rights Capital II LP, TriStar Pictures Inc., and QED International.

November 27, 2013, Appellee/Defendants (**Defendants**) file their Answer

and Affirmative Defenses **(AAD),** declaring Media Rights Capital is "erroneously**"** named, naming an unknown *MRC II Distribution Company* as the proper Defendant.

December 19, 2013, Plaintiff files his First Amended Complaint **(FAC),** to affirm his Complaint identified the proper Defendant**.** The FAC was submitted within 21 days of the initial Complaint, therefore, did not require permission to amend (Fed R. Civ. P, Rule 15). In an unusual move, on page 28, line 16-26 of the FAC, [ER 105] the Plaintiff stated that although Defendant Neill Blomkamp announced the film was completely edited in April of 2013, the Plaintiff posited that in May or June of 2013, after learning of the Plaintiff's immanent suit, the Defendants secretly re-edit their film in to change the "headache" scenes. (Discovery revealed Plaintiff was correct, as Defendant(s) resumed editing their film in May or June).

January 6, 2014, Plaintiff moves for sanctions against the Defense Counsel, for their efforts to name fictitious subsidiary, *MRC II Distribution Company*, as a defendant. Plaintiff shows the Defense Counsel represented MRC in the 2012 suit with Phillip K. Dick's Estate concerning film "The Adjustment Bureau" (*Archer Dick Coelho v. MRC Distribution Company, L.P. et al*), and was, therefore, well aware of MRC's true identity. [ER 365]

5

January 16, 2014, Parties appear before the Northern District, Oakland Division, for Initial Case Management Conference (ICMC), Honorable Judge Phyllis J. Hamilton presiding. The Court had not yet read Plaintiff's motion for sanctions, filed 10 days prior. The Court denies the motion for sanctions. [ER 374]

April 8, 2014: the Plaintiff filed a <u>MOTION For a Further Continuance of Case Management and Pretrial Order Deadlines</u>, requesting a seemingly reasonable 120 day continuance of all dates in the case management and pretrial order. [ER 376]

April 17, 2014: Further Case Management Conference held. Hon. Judge Hamilton **<u>denies (in part) Plaintiff the 120 day continuance</u>**, The Court grants only a 60 day continuance –**BUT does NOT continue dispositive motion deadline, <u>leaving Plaintiff only 29 days to respond to and serve all discovery requests, and only 60 days to complete fact and expert discovery.</u>** [ER 380]

May through June, Plaintiff answers all Defendants' Interrogatories, and provides all but one request for document production, surrendering nearly 1000 pages. Plaintiff submits 25 interrogatories to each Defendant –who object to nearly 40% of the interrogatories, and answer most of the remaining interrogatories evasively. The Defendants provide few of the Plaintiff's discovery requests.

June 12, 2014, after reading over 30 books, comics and graphic novels, to verify the claims in the Declaration/report (**report**) of the Defendants' expert, Jeff Rovin (**Rovin**), <u>Plaintiff moves to exclude the report</u>, due to the fact that Rovin:

1) committed fraud on the court (fabricating evidence purporting to substantiate his claims); **2)** misrepresented literary works; **3)** made false statements, (even falsely referencing his own work); **4)** provided invalid citations. [ER 382]

June 12, 2014, Plaintiff files Motion for Leave to File Second Amended Complaint after learning, through discovery, the identities of new participants in the infringement (including four MRC entities), and learning that Defendant Blomkamp and his editors re-edited the film in May/June of 2013. [ER 402]

June 16th, 2014, Plaintiff's Motion to File a Second Amended Complaint is denied and stricken as Plaintiff did not include a required attachment. [ER 406]

**July** 17, 2014, after 35 DAYS, the court responds to Plaintiff's motion to exclude Defendant's expert's report. Since the signed and dated Report had not been filed with the court, just disclosed to the Plaintiff, the court **defers** its ruling.[ER400]

July 18, 2014, still wishing to bring discovery facts and parties to light, Plaintiff files an **Amended** Motion for Leave to File Second Amended Complaint. [ER 407]

July 20, 2014, the court denies Amended Motion For Leave to Amended. [ER 410]

July 30, 2014: Plaintiff files motion for summary judgment **(MFSJ).**[ER 47] The Defendants also file MFSJ, with the **unaltered** report of Jeff Rovin.[ER 496]

September 3rd, 2014, Parties convene before the Honorable Judge Hamilton for **Summary Judgment Hearing**.

October 3rd, 2024, The district court issues its **Order Re Motions For**

**Summary Judgment**, ruling in favor of the Defendants and against Plaintiff, citing Rovin's report/dissection analysis –citing some of the falsified content Plaintiff brought to light in his motion to exclude (disqualify) Rovin. [ER 14]

## SUMMARY OF ARGUMENT

### The Defendants' (Appellees') Position

The Defendants maintain that although the Plaintiff may be able to demonstrate *substantial similarity*, he cannot prove *access*. Therefore, the Plaintiff must demonstrate Striking Similarity between the works –a level of similarity that is very high –and precludes the need to show access.

The Defendants argue that the countless similarities between the Plaintiff's work and the Defendants' are a product of coincidence, and all such similarities are meaningless, involving only common plot turns and irrelevant story aspects.

The Defendants argued in their AAD (mistakenly) that a "plot" is not copyrightable, and maintained that the contested works were not substantially similar, denying the Plaintiff's 'access' claims as conjecture without merit. Later, in their MFSJ, the Defense said that the two works were not <u>Strikingly Similar</u>, and argued that the Plaintiff's plot contained **non-protectable** features, which they (mistakenly) argued were not copyrightable, citing *Funky Films v. Universal Films* <u>20 TIMES</u> to support this. [ER 461]

## The Plaintiff's Position

The Plaintiff maintains the two works (or significant portions of the two works) are substantially similar. He also maintains the points that follow.

1. The court failed to apply substantial similarity standards outlined in L.A. Printex (failing to test the "object similarities in protectible elements"). Thus, the court failed to analyze Plaintiff's plot's arrangement of non-protectable features (which are protectable), AND the court disregarded case law confirming detailed "plots" arrangements of nonprotectable elements are copyrightable [*Grosso v. Miramax Film Corp.,* 383 F.3d, (2003); *Metcalf v. Bochco*, (9th Cir. 2002); *Shaw v. Lindheim* (9th Cir. 1990)…];

2. The court failed to provide Plaintiff "broad" protection, <u>and</u> failed to understand a work need not be "virtually identical" to infringe (*L.A. Printex*)

3. The court failed to apply the proper standard to determine "Striking Similarity", choosing a manufactured Nimmer standard over case law;

4. The court failed to understand it is not necessary to replicate an entire work to infringe, only a substantial portion of that work (*L.A. Printex*);

5. Plaintiff has shown access, consistent with the <u>circumstantial standards of</u> <u>widespread dissemination</u> established by *L.A. Printex v. Aeropostale*, AND the Ninth Circuit's definition of "reasonable opportunity of access";

6. The court made many clearly erroneous determinations, and abused its discretion, consistently and prejudicially against Plaintiff (e.g. omitting ALL headache descriptions from ALL *plot, sequence* and *character* analysis in the order, and misstating the Plaintiff's central copyright claims);

7. The order is predicated on the flawed report of Defendants' expert, Rovin, who provided an invalid dissection analysis (rather than a collective elemental comparison) which should have been rejected. A Defendant must demonstrate the combined elements of Plaintiff's work are found ALL together, in a single previously published work —NOT find each separate element, alone, in various previous works, as Rovin does.

8. The court mistakenly and consistently ruled that minute and meaningless changes formed new *expressions* (e.g. although the super-rich exclusively lived on both parties' satellite-worlds, the court ruled the "giant satellites for the super-rich, orbiting Earth" were expressed differently because background characters, who were merely "very-rich" were permitted to visit the Plaintiff's satellite for costly medical procedures). The Ninth Circuit ruled *in L.A. Printex* that a rational jury could find differences "inconsequential", the Circuit Court cited Nimmer on Copyright 13.03[B][1][a] (paraphrasing) **differences are immaterial if similarity to a substantial element can be shown.**

9. The court did not test for "Striking Similarity," or acknowledge Plaintiff's MFSJ comparisons which utilized established 'Striking Similarity' test tools.

10. The court clearly erred in arbitrarily ruling the Defendants' hero's recurring headaches did not infringe –even as they replicated the Plaintiff's hero's reaction to pain (falling to his knees, grabbing his head, screaming). The court further erred in ruling the Defendants' "headaches" were not headaches but 'seizures' –when the Defendants' script refers to the events with headache terminology—"migraine" and "cerebral pain". [ER 300, 314]

## Access

In his FAC, Plaintiff provided detailed facts alleging that in 2007, Defendant Blomkamp (an undiscovered **short-filmmaker)** accessed his work while posted on the interactive creative social network, TriggerStreet.com **(Trigger Street)**. [ER 81]. Trigger Street was **not** a mere "website"; it was a massive, U.S. based social network/marketplace, connecting filmmakers and screenwriters, exclusively. With Trigger Street's huge membership of over 100,000, and the fact that the Parties were engaged in the same market (filmmaking), the Plaintiff's work was widely disseminated, and the Defendants had **reasonable opportunity of access**.

## Widespread Dissemination

In the sage *L.A. Printex v. Aeropostale Inc.* ruling, the Court stated that the standard for "widespread dissemination will vary from case to case." This is

11

**particularly** important in this case –because **there is no market for screenplays**. **Regular people do not buy screenplays**, film-producers do. With no conventional market, screenwriter must work exhaustively, often for years, to finally make contact with a producer or insider. The majority of aspiring screenwriters never make that contact.

Plaintiff has been to hundreds of bookstores, yet he has never seen a screenplay for sale. Some Barnes & Noble Bookstores carry 200,000 titles –but not a screenplay. This might suggest a fair conversion rate for book purchases to screenplay downloads is **200,000 to 1**. During his first month on Trigger Street, **in one night,** March 2, 2007, the Plaintiff's screenplay had **nine (9) downloads**, automated Trigger Street emails to the Plaintiff, verifying this, **were attached to the FAC** (Exhibit M) [SPLMNTL RCRD 3]. The district court did not notice this document. Similarly, in the L.A. Printex case, the district court had not given due consideration to the Plaintiff's sales records. At a conversion rate of 200,000 to 1, **the Plaintiff's nine downloads are the equivalent of 1.8 million downloads –in one night.** The Plaintiff's work was posted for seven months. Although there is no other surviving download data, the Plaintiff assures the Court his download numbers were very healthy –particularly in his final two months on Trigger Street.

Previous "widespread dissemination" standards were conceived before the advent of the internet –and special-interest online social networks—back when

there was no way to "market" a screenplay –except query letters —back when there was no social network connecting screenwriters with filmmakers, and industry professionals —before the internet AND Trigger Street changed things.

## STANDARD OF REVIEW

This Court reviews an order granting or denying summary judgment de novo and uses the same standard as the District Court under Federal Rule of Civil Procedure 56. *Padfield v. AIG Life Ins. Co.,* 290 F.3d 1121, 1124 (9th Cir. 2002). Viewing the evidence in the light most favorable to the non-movant, this Court must determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). In reviewing the District Court's ruling on the parties' cross-motions for summary judgment, this Court "evaluate[s] each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *Id.*

## ARGUMENT

## ARGUMENT

1.  **THE COURT'S ACCESS RULING ERRS AS IT FAILED TO APPLY ACCESS STANDARDS FROM L.A. PRINTEX V. AEROPOSTALE (9TH CIR, 2012) AND RELIES ON <u>REVERSED</u> CASE LAW, AND HOLDS PLAINTIFF TO A SEPARATE STANDARD.**
    A.  <u>The Access Case Law Cited By The Court Was Reversed By L.A. Printex V. Aeropostale.</u>

B. <u>The Court Did Not Apply The Widespread Dissemination Standards Established In *L.A. Printex Indus v. Aeropostale, Inc.*</u>

C. <u>The Availability Of Plaintiff's Work On The Only Social Network For Filmmakers & Screenwriter, And Parties Engaged In The Same Market Confirm Widespread Dissemination.</u>

Although the Plaintiff's MFSJ cited *L.A. Printex Indus. Inc. v Aeropostale, Inc.,* 102 U.S.P.Q.2nd (BNA)(9th Cir 2012), the court order omitted L.A. Printex and cites the very case law that *L.A. Printex* reversed. The order cites *Three Boys Music v. Bolton* (9th Cir. 2000), and *Art Attacks Ink, LLC v. MGA Entm't Inc.* (9th Cir. 2009)[3], stating, 'Reasonable access requires more than a "bare possibility" and "may not be inferred from mere speculation or conjecture."' [ER 25]

**However, this was reversed by *L.A. Printex v. Aeropostale***, as the Court ruled <u>a plaintiff can prove access using circumstantial evidence of "widespread dissemination</u>." The Court also recognized the necessity of fact-specific inquiry to determine "widespread dissemination," and ruled, **"the evidence required to show wide dissemination will <u>vary from case to case</u>,"** contemplating factors such as whether both parties were engaged in the same market.

But the district court used the reversed *Three Boys Music*, and *Art Attacks Ink* cases, [EG 25], **establishing an impossibly high access standard for the**

---

The Defense Counsel attempted to introduce Art Attacks Ink v. MGM Entm't Inc. at hearing, September 3rd, 2014, to refute Plaintiff's access claims. The court denied this late effort. YET, the COURT ORDER cites the Art Attacks Ink case to the exclusion of prevailing L.A. Printex v. Aeropostale Inc. [ER 665]

**Plaintiff.**

"**ACCESS**" is a '**reasonable opportunity** of access' –not surveillance

footage of a Defendant reading the Plaintiff's screenplays.

The Ninth's Manual of Model Jury Instructions (Civil) explains:

> "You may find that the defendant had access to the plaintiff's work if [[the defendant] [whoever created the work owned by the defendant] ]had a reasonable opportunity to [view] [read] [hear] [copy] the plaintiff's work before the defendant's work was created."

The Manual provides 4 methods to show "*reasonable opportunity*":

> 1) "a reasonable opportunity to [view] [read] [hear] [copy] the plaintiff's work before the defendant's work was created."

> 2) a chain of events connecting plaintiff's work and the defendant's opportunity…

> 3) the plaintiff's work being widely disseminated] [or]

> 4) a similarity between the plaintiff's work and the defendant's work that is so "striking" that it is highly likely the works were not created independent of one another]."

The specifics of the *access* are detailed in Plaintiff's FAC. [ER 81]  In short,

Plaintiff contends that in 2007, Defendant Neill Blomkamp (then, an undiscovered

**short-filmmaker,** living in California) accessed Plaintiff's work while it was

posted on Academy Award-winning actor Kevin Spacey's social network, *Trigger

Street*, February to August of 2007. Trigger Street was NOT a mere website, as the

Defense purports. Trigger Street was a massive U.S. based social

network/marketplace designed to expose, discover and bring new

filmmakers and screenwriters together with industry professionals.

Trigger Street's '*About Us*' page explains Spacey created the site to **"inspire, nurture, and <u>help bring exposure to new and undiscovered talent</u>… TriggerStreet.com was founded in January 2002 as the web-based <u>filmmaker and screenwriter's community of record - an interactive mechanism for the purpose of discovering and showcasing new and unique talent</u>…**

*TIME* (magazine) voted Trigger Street one of the 50 Best Websites of 2004. Trigger Street was the **<u>only</u>** social network for filmmakers and screenwriters. With Trigger Street's membership over of 100,000 in 2004 (likely much more in 2007), its unparalleled importance to screenwriters and filmmaker –AND the fact that the <u>parties were in the same market –filmmaking</u>, the Plaintiff's work was *widely disseminated,* and the Defendants had "reasonable opportunity of access".

After the Plaintiff filed this suit, the story carried on hundreds of websites, becoming one of the most covered film industry infringement stories of the year. Well-informed writers, lawyers, and law students—from Lexis Nexus, to intellectual property Law School writers—covered the story. But none of these writers doubted the charges. Upon reading the Complaint and attachments, these reasonable minds saw a **very** "reasonable opportunity of access".

In the *L.A. Printex* case, the Appellate Court overruled the district court, finding (from the same evidence) that "<u>A reasonable jury could find</u> [Plaintiff's

work] <u>was widely disseminated</u>." Similarly, in this case too, a reasonable jury could find Plaintiff's work was widely disseminated.


**ARGUMENT**

**2. THE COURT ERRED IN ITS SUBSTANTIAL SIMILARITY TEST; BY OMITTING *L.A. PRINTEX* THE COURT FAILED TO TEST "OBEJECTIVE SIMILARITIES IN PROTECTIBLE ELEMENTS" & FAILED TO GIVE PLAINTIFF "BROAD" PROTECTION.**
**A.** <u>The Order Failed To Contemplate Works Need Not Be "Virtually Identical" To Infringe.</u>
**B.** <u>The Court Did Not Identify (Or Provide "Broad Protection) To Plaintiff's Protectable Arrangements Of Unprotectible Elements.</u>


In this case, the district court applied substantial similarity principals which were <u>uniformly counter to the Circuit Court</u>.

**EXAMPLE ONE:** The district court ruled that inconsequential changes in the Defendants work constituted "*different expressions*", thus, did not infringe. But in *L.A. Printex*, the Ninth Circuit found a rational jury could find infringement despite differences, and ruled a work need **not** be "virtually identical" to infringe.

**NOTE:** In *L.A. Printex* the 'differences' between the contested works (which the Court found negligble) were MUCH more significant than the differences in this case. In L.A. Printex, among other changes, the Defendants drastically changed the **<u>color</u>** of their fabric –extremely important in fabric design. In this case, the Defendants made nuanced changes: changing the hero's backstory,

17

job, adding a robot here, a laser there, but no substantial plot changes. **The central plot of both works is still: a poor guy with a horrible headache affliction must find a way to a giant satellite-city for the super-rich (housing over 100,000 residents), and fight a genetically reprogrammed villain** (or *re-atomized* villain**), to get medical aid to save his daughter** (or *himself and his girlfriend's daughter*)**.**

**EXAMPLE TWO:** the district court based its ruling on the dissection analysis of Defendants expert, Rovin. But in *L.A. Pintex* the Appellate Court rejected the dissection method, and favored comparing the selection and arrangement of elements (the method employed by the Plaintiff), to reveal the **"objective similarities in protectable elements"**.

In *L.A. Printex v Aeropostale* the Court also: **1)** affirmed the protectiblity of selection and arrangement of unprotectable elements; **2)** affirmed "broad" protection for creative arrangements of unprotectible elements ; **3)** determined, "a copyright defendant need not copy a plaintiff's work in entirety to infringe that work. It is enough that the defendant appropriated a substantial portion of the plaintiff's work"; **4)** ruled that **differences "do not compel the conclusion that no reasonable juror could find that the Defendants' design is substantially similar…"** Rather, they confirmed to the Court, **"that there is a genuine dispute**

18

**of material fact on substantial similarity.**" This formed the basis of the Court's decision to remand the case for trial.

The Ninth Circuit found dissection analysis improper in *L.A. Printex*. So surely the district court's use of dissection to find arrangements "expressed differently" due to trivial differences was egregiously improper, when *L.A. Printex* instructs that the court should have provided the Plaintiff's arrangements with *broad protection*.

In accord with L.A. Printex, the district court (and Rovin) also made the following errors:

1.      **The court erred** in finding that although, in both parties' works, the super-rich lived on satellite-worlds which orbited a poor and overpopulated Earth, these "giant satellites for the super-rich" were *expressed differently* because background characters (who were very-rich, *but not "super-rich"*) may have visited Plaintiff's satellite and not the Defendants'.

2.      **The court erred** in finding the Defendants' hero's recurring headaches (causing the hero to kneel, grab his head and scream –just as the Plaintiff's hero) did not infringe on the Plaintiff's work simply because the Defendant called these headaches "seizures"—disregarding the facts that

1. seizures sufferers do not fall to their knees, grip their heads, and scream;

2. the Defendants refer to the events as "migraine" and "cerebral pain".

3.      **The court erred** in ruling Defendants "dystopic Earth" was *expressed differently* because people in the Defendants' work did not travel in private flying vehicles called "sky-cars" (although they did travel in private flying vehicles) –even though both works shared the following aspects:

   1. the heroes live in slums overrun by thugs and crime;
   2. the poor have little access to medical care;
   3. police and military vehicles loom in the sky & brutalize the poor;
   4. Army ships, full of "undesirables" are released into the slums;
   5. the poor are brutally ruled by the government of the satellite-city;
   6. rich businesses build plants in slums to capitalize on cheap labor;
   7. people travel by flying shuttles & cars to the satellite for the rich.


**ARGUMENT**

**3. THE COURT ERRED IN USING DISSECTION ANALYSIS, (DISCREDITED BY *L.A. PRINTEX*); THUS, FAILED TO ANALYZE OBJECTIVE SIMILARITIES IN PROTECTABLE ELEMENTS.**

**A.** The Court Tested *Substantial Similarity* By Dissecting Plaintiff's Elements & Comparing To Previous Works. The Proper Method Is Comparing Selection And Arrangement Of Protectable Elements.


As affirmed in L.A. Printex (and others), the selection and arrangement of unprotectible elements can be protectable. To assess the protectability of a work, the tester must consider the collective elements that make up a work, or a substantial aspect thereof, then compare ALL of those collective elements to the Defendants' work, or find them all together in a single previously published work.

But the Defendants' expert did not use this method. Rather, Rovin, isolated nine of the Plaintiff's many elements, then **separately** compared each of these

single elements to various published works. Rovin then purported these elements

existing in prior works (falsely), and declared these elements unprotectible. [ER

496]. This is dissection analysis. In *L.A. Printex*, **the Ninth Circuit rejected**

**dissection analysis (as many Circuit Courts have), stating:**

> "(Each note in a scale, for example, is not protectable, but a pattern
> of notes in a tune may earn copyright protection."). For this reason,
> the Second Circuit has rejected the argument that, "in comparing
> [fabric] designs for copyright infringement," a court must "dissect
> them into their separate components, and compare only those
> elements which are in themselves copyrightable." Knitwaves, Inc.
> v. Lollytogs Ltd., 71 F.3d 996, 1003 (2d Cir.1995) ("[I]f we took
> this argument to its logical conclusion, we might have to decide
> that there can be no originality in a painting because all colors of
> paint have been used somewhere in the past."

The court's **dissection, by definition**, could not compare arrangements, or

consider the "*objective similarities in protectable elements*," as instructed by L.A.

Printex, nor did it provide Plaintiff's arrangements *broad* protection.


**ARGUMENT**

**4. THE ORDER ERRS AS IT IS PREDICATED ON THE OMISSION & MISTATEMENT OF CENTRAL FACTS & CLAIMS.**
    A. An Order Based On Fallacy Cannot Yield A Valid Conclusion.

The court order is predicated on omissions and misstatements of fact, too

numerous to fully attend. But most disconcerting are the following points.

(**1**) In both the Plaintiff's FAC and MFSJ, the Plaintiff included a side-by-

side comparison of these headaches —showing that they occurred in similar

sequence <u>and</u> were expressed almost identically –<u>both heroes falling to their knees,</u> <u>clutching their heads, screaming</u>. [ER 64, 65, 87, 88] Yet the court omitted these decisive descriptions from <u>all</u> analysis, arbitrarily concluding they were expressed differently. [ER 37]

(**2**) The order downplays the Plaintiff's script's extreme poverty, stating that in the Plaintiff's screenplay there is "some poverty in the zones," [ER 41], when, in fact, the Plaintiff's screenplay describes a world of 65% poverty. And Plaintiff informed the court in his **<u>FAC</u>**, MFSJ and Opposition Brief that his logline/synopsis (posted on his website in 2010, preserved as it appeared then on the Internet Web Archive, <u>and attached to FAC</u>) describe a world or 95% poverty - where only the elite .01% live on the super-satellite. That logline reads:

> "**BUTTERFLY DRIVER** (<u>Synopsis/ Logline</u>)**:** In 2144 Earth is grossly overpopulated, with 95% of the population living in poverty, while the elite .01% live on the giant man made luxury satellite, Uberopolis. Against this backdrop, in some anonymous slum, legendary soldier -and world's most wanted fugitive, Arlo Grainer, learns the polluted atmosphere will kill his daughter unless she receives an extremely costly drug. For that medicine Arlo will go across the globe and into the heart of Uberopolis, pursued by every bounty hunter on Earth"     [ER 104]

(**3**) The court stated that in the <u>Defendants</u>' work, "The entire population is heavily unemployed and extremely poor". Yet, the court read the Defendants' script and viewed the film, and saw that Frey (the female lead, love interest) lives in a nice house, in a fine neighborhood. Frey's house has so much expensive medical equipment that it is described as *part house, part hospital*.  Frey also has

22

$90,000 in cash in her house that Max steals (p 72 Elysium),[ER 309]. *Yet she is merely a hospital nurse*. It can <u>only</u> be assumed that every employee at her hospital is as rich. MEANWHILE… across town, 'Spider' transports dozens and dozens of people to Elysium, daily, in his <u>expensive spaceship</u>, charging the "poor" people of his town $90,000 apiece. AND the richest man in the world, Carlyle, Max's boss, works in a factory in the hero's neighborhood. **Against this, the court opines that "The <u>entire population</u> is heavily unemployed and <u>extremely</u> poor**."[ER 41]

(**4**) The order also omits from its "sequence of events" the following ten, mutual, sequential events (from Plaintiff's opposition brief). [ER 424, 425].

**1.** Catalyst: the hero resolves to go to the satellite world for medical aide;

**2.** Hero contacts underworld figure to get ID & transport to the satellite;

**3.** The hero successfully gets fake ID and **ticket** to the satellite (<u>although Elysium's Max does not need a **"ticket"**, just money –the writer absently parrots this refrain from the Plaintiff's work</u>);

**4.** Once hero gets ID, he struggles to find transport to the satellite;

**5.** The heroes of both works then threaten to detonate explosives as they confront the villains;

**6.** The hero begins a lengthy battle against the villain on the satellite world;

**7.** During the climax of the battle, as the hero seems to gain the upper-hand, the hero has a terrible headache, giving the villain the advantage;

**8.** As the hero seems to die his <u>keepsake necklace</u> factors back into the story;

**9.** The hero's actions are shown to have saved the girl central to the story;

**10.** It is then revealed that the hero's action have far reaching, global consequences (effectively liberating or saving much of the world).

(**5**) The court misstated fact –or revealed fundamental misconceptions, as, citing Rovin, the court stated Plaintiff's "plot features, themes, characters, and other features of the Butterfly Driver Screenplay are ***stock*** or ***generic*** elements or ***scènes à faire***" (quotations omitted). In fact, as these terms are defined, none of the Plaintiff's elements or arrangements is *stock*, *generic*, or *scènes à faire*. [ER 45]

## ARGUMENT

5. **THE COURT ERRED IN NOT CHOOSING A CASE LAW STANDARD TO DEFINE "STRIKING SIMILARITY"**

    **A.** <u>The Court Applied A Standard For Assessing *Striking Similarity* With No Genesis In Law, Choosing An Invented Nimmer Standard Over Established Case Law. This may set a dangerous precedent.</u>

The district court applied a standard of "Striking Similarity" which is unreasonable, and impossibly high –<u>with NO genesis in law</u>, from Nimmer on Copyright (2005). The court selected the Nimmer standard, submitted in the Defendants MFSJ. Plaintiff's MFSJ asked the court to apply the standards provided by actual case law, *Selle v Gibb* (1984), where "Striking Similarity" standard was first implemented, or *Ty, Inc. v GMA Accessories* (1997) . [ER 421]

The Plaintiff believes either case law standard is appropriate as they adhere to Learned Hand's original, reasoned intent. These three separate standards read.

- "...similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Selle v. Gibb* 741 F.2d 896 (1984).

- "A similarity that is so close as to be **highly unlikely** to have been an accident of independent creation *is* evidence of access… Access (and copying) may be inferred when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first." *Ty, Inc. v. GMA Accessories* (7th Cir. 1997)

- "At base, 'striking similarity' simply means that **in human experience**, it is **"virtually impossible"** that the two works could have been independently created."  –**Nimmer On Copyright** (2005)

The court's choice of Nimmer's *invented*, non-case-law standard, over case law, burdens the Plaintiff with an unproven, unreasoned, impossibly high standard, that will establish a precedent that may imperil copyrights –not protect them.


**ARGUMENT**

6. **THE COURT ERRED IN ITS DIRECT COMPARISON RULING**
   **A.** The Court Cited A Lower Court Ruling That Plaintiff's Screenplay Should Be Compared To Defendants' Film –Not Screenplay

Although the Plaintiff's FAC and MFSJ compare the contested screenplays,

25

the court compares Plaintiff's screenplay to the Defendant's film. The court wrongly cited a lower court ruling (*Quirk v. Sony Pictures Entertainment, Inc.* 2013 WL 1345075) which found "the only relevant matter [was]… whether the final movie was filmed edited and released"… However, Plaintiff's MFSJ explained that Defendant Blomkamp first realized profit from his **screenplay**, when his loan-out company, Sable Productions, Ltd., entered a writing agreement with Oaktree Ent., Inc. Therefore, the comparison must be between contested screenplays. *Walt Disney Productions v. Filmation Associates* 628 F. Supp., 871, (1986), established **preliminary works in the production of a motion picture can constitute infringing copies** under the Copyright Act of 1976. [ER 59]


**ARGUMENT**

**7. THE ORDER ERRS AS IT DID NOT TEST FOR "STRIKING SIMILARITY"**

    **A.** Plaintiff's MFSJ Contained Established "Striking Similarity" Tests Which Were Not Contemplated By The Court.


Plaintiff's MFSJ & FAC included comparisons for Striking Similarity, from Patry on Copyright (Patry, W. 2009), which confirmed Striking Similarity. The court performed no such tests. [ER 72-75, 97, 98, 101, 105] These tests are:

1. Uniqueness, intricacy, or complexity of the similar sections;
2. Idiosyncratic elements repeated in the alleged infringing work;
3. The appearance of the same errors or mistakes in both works;
4. Obvious or crude attempts to give the appearance of dissimilarity.

**ARGUMENT:**

8. **THE COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THE CREDIBILITY OF THE PARTIES IS AT ISSUE**
     A. <u>Plaintiff's Motions To Sanction The Defense, And To Exclude Expert, Rovin, Should have Precluded Summary Judgment</u>.

Plaintiff moved for sanctions against the Defense Counsel due to Plaintiff's belief that the Defense had been willfully dishonest with the court about the identity of a Defendant, etc., [ER59] and moved to disqualify Defendant's expert witness, Jeff Rovin, for fraud on the court, misrepresenting literary works. [ER 384]

These events cast doubt on the credibility of all Defensive parties.

*Arnstein v. Porter* 154 F.2d 464 (2d Cir. 1946), found summary judgment improper when the credibility of the parties is an issue. [ER 421] And ***Shaw v. Lindheim*** (**9th Circuit. 1990**) found <u>summary judgment is not highly favored on questions of **substantial similarity**</u> in copyright cases. Ergo, the Defendants' MFSJ should have been denied.

**ARGUMENT:**

9. **THE ORDER ERRS AS THE COURT MISUSED ITS DISCRETION AND PREJUDICIALLY RULED AGAINST PLAINTIFF**
     A. <u>The Court's Denial Of Plaintiff Motions For Leave To File A Second Amended Complaint, And For A 120 Day Continuance, Made It Impossible To Authenticate Evidence, Conduct Depositions, Or Enter His Own Declaration</u>.

Plaintiff submitted several motions necessary to defend his interests, which the court denied**.** But the motions denied which were most hurtful to Plaintiff's

ability to defend his interests were the denial of leave to amended, and denial of 120 day continuance, and Plaintiff's motion to exclude Rovin.[4]

The court's denial of Plaintiff's motion for leave to file second amended complaint made it impossible to add a full description of his satellite world (from earlier versions of his script, posted on Trigger Street) which described the satellite's giant forest and aqua-sphere, heavily infringed on by the Defendants.

Although the court granted Plaintiff a 60 day continuance of some deadlines, **the court would NOT continue dispositive motions deadline**, leaving Plaintiff **only 29 days** to respond to and serve all discovery requests, and **only 60 days** to complete fact and expert discovery. the denial of the full 120 day continuance, prevented Plaintiff from conducting depositions and submitting

---

[4] Further evidence of the court's bias against the Plaintiff is seen in the fact that although informed of these matters in Plaintiff's motion to exclude Rovin, the court cited Rovin's assertion that "Satellite as refuge for the super-rich," was not novel, then cited the six works cited by Rovin (note: Plaintiff made no claim to: "satellite as a refuge to the super-rich," rather, plaintiff claimed "giant satellite-world for the super-rich, orbiting Earth"[ER 134, 136]):

1. **"Star Trek, *Cloud Minders*"** was not a satellite city, but a small fortress floating on a reverse magnetism cloud in a **fixed place**; it was **not** for the rich, but for artist and intellectuals. It was not set near Earth, but a distant planet.

2. **Abercrombie Station** was not about a giant satellite for the rich, **but** about a small space resort for people who had stayed in space too long and had become obese –and attracted to the obese –and a girl who doesn't want to marry one of the obese vacationers. [ER 388]

3. **A Wizard in Bedlam** was **not** about a satellite for the rich orbiting Earth, **but** a land-based colony on a **distant planet**, established by the *disenfranchised* (the exact opposite of *the rich*). Established by: "…people who were sick and tired of not being able to have things their own way" (p 19).[ER 388]

Rovin's other three examples are just as flawed.

additional interrogatories needed to authenticate evidence (particularly to authenticate Defendant Blomakamp's screenplay –which is surely genuine), and denied Plaintiff the time needed to write and submit his own declaration,.

In the interest of Justice, the court had **good cause** and **inherent authority** to grant Plaintiff leave to amend, and grant a full 120 day continuance of deadlines.

### Summary

Copyright infringement requires a showing of *access* and *substantial similarity*. The Plaintiff has shown "widespread distribution" and "reasonable opportunity of access" to his work, and he has shown "substantial similarity" –and, he believes, "Striking Similarity" –between his work and the Defendants' work**.**

The district court failed to apply proper case law and standards to evaluate *access* and *substantial similarity*, failed to give the Plaintiff's work "broad" protection, made clear errors of law, fact and discretion prejudicially toward the Plaintiff, and based its order on discredited dissection analysis.

With knowledge of the prevailing laws, the Defense Counsel and the Defendants knowingly directed the court to reversed case law and unproven legal standards. In so doing, they admit they have no reasonable defense, they admit the Defendants' work is substantially similar to the Plaintiff's, and they admit the Defendants had "reasonable opportunity of access" to the Plaintiff's work, **confirming copyright infringement**—to such an extent that **no** reasonable jury

could find that the Defendants' work is not substantially similar to the Plaintiff's or find the Defendants did not have reasonable access to the Plaintiff's work.

In L.A. Printex Indus. V Aeropostale (9th Circuit, 2012), the Court cited 4 Nimmer on Copyright § 13.03[B[[1][a] (**"It is entirely immaterial that, in many respects, plaintiff and defendant's works are dissimilar, if in other respects, similarity to a substantial element of the plaintiff's work can be shown."**)

In remanding *L.A. Printex v. Aeropostale,* The Ninth Circuit also stated: **"The differences noted in the district court do not compel the conclusion that no reasonable juror could find that Defendants' design is substantially similar to [Plaintiff's work]. Rather, in light of the similarities described above, the differences support the opposite conclusion, that there is a genuine dispute of material fact on substantial similarity."**

## CONCLUSION

Upon consideration of the preceding facts, the Appellant asks the Ninth Circuit Court of Appeals to REVERSE the district court's ruling, in favor of the Appellant/Plaintiff.

Dated: February 23, 2015

Respectfully Submitted: /s/ Steve Wilson Briggs
Steve Wilson Briggs
Plaintiff, Pro se
681 Edna Way
San Mateo, CA 94402
(510) 200 3763

30

**CERTIFICATE OF COMPLIANCE PURSUANT TO
FED. R. APP. P. 32(A)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NO. 14-17175**


I certify, pursuant to Fed R. App. P. 32(a)(7)(C) and Circuit Rule 32-1, that the foregoing brief is proportionately spaced, has a typeface of 14 points, and contains 7,444 words.


February 23, 2015

_____ /s / Steve Wilson Briggs _____