No. 14-17175

_____

# UNITED STATES COURTS OF APPEALS
# FOR THE NINTH CIRCUIT

_____

STEVE WILSON BRIGGS
Plaintiff-Appellant

v.

SONY PICTURES ENTERTAINMENT, INC., NEILL BLOMKAMP, ET AL
Defendants-Appellee

_____

On Appeal from the United States District Court
for the Northern District of California,
D.C. No. 4:13-cv-04679-PJH

Hon. Judge Phyllis J. Hamilton

_____

# APPELLANT'S PETITION FOR REHEARING
# AND REHEARING EN BANC

_____

Steve Wilson Briggs
681 Edna Way,
San Mateo, CA 94402
(510) 200 3763
snc.steve@gmail.com

*Appellant In Propria Persona*

**TABLE OF CONTENTS**

Table of Contents………………………..……………………………………… i

Table of Authorities………………..……………………………………….....… ii

Introduction…………………………..…………………………………………. 1

Argument…………………………………………………………………………. 3

I. An aspect of the Opinion requires consideration by the full Court because (1) the Opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity; (2) it is necessary to secure or maintain uniformity of the Court's decision; (3) the proceeding involves a question of exceptional importance. <u>Also and alternatively, a panel rehearing is also appropriate regarding this aspect, because</u>: (4) a material point of fact or law was overlooked in the decision; and (5) an apparent conflict with another decision of the Court was not addressed in the opinion……………………………………….....…….... 3

II. Another substantial aspect of the Opinion overlooks material points of law, and creates conflicts with prior decisions of this court; thus, a rehearing is necessary to secure uniformity of this Court's decisions.............................. 5

III. And in another substantial aspect of the Opinion, a material point of fact or law was overlooked, and an apparent conflict with another decision of the Court was not addressed in the Opinion; thus, consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions…..... 7

IV. The panel's Opinion directly conflicts with standards and protocols among the circuit courts and the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity………………………………………………………………….... 9

V. The proceeding involves a question of exceptional importance……....…… 11

Conclusion……………………………………………………………………… 14

## TABLE OF AUTHORITIES

*Cases:*

*Rentmeester v. Nike*, (9th Cir., 15-35509, July, 2017)................................. 2, 5, 6, 7

*L.A. Printex Indus v. Aeropostale, Inc*. (9th Cir, 2012)............................. 3, 4, 7, 8, 9

*Mattel, Inc. v. MGA Entertainment, Inc.,* 616 F.3d 904 (9th Cir. 2010).................... 6

*Harper & Row v. Nation Enterprises*, 471 U.S. 539 (1985)..................................... 7

*Selle v. Gibb* 741 F.2d 896 (1984)...................................................................... 10

*Ty, Inc. v. GMA Accessories* (7th Cir. 1997)............................................................ 10

Kumho Tire Co. v. Carmichael 526 U.S. 137, 148 (1999)..................................... 13

*Statutes, Rules, and Constitutional Provisions*

Fed. R. App. P. 40…....................................................................................... 1

Fed. R. App. P. 35…………………………………………………………………… 1

Ninth Circuit Rule 35-1 to -3……………………………………………………… 1

*Other Sources*

Nimmer On Copyright (2005)........................................................................ 10, 11

## Introduction

Appellant Steve Wilson Briggs hereby petitions for a rehearing and rehearing en banc of the Opinion (Doc. 32-1) entered February 28, 2018, in favor of the Appellees, affirming the District Court's ruling. A panel rehearing is appropriate per Fed. R. App. P. 40, in decisions such as this, when an apparent conflict with another decision of the Court was not addressed in the opinion, or a material point of law or fact is overlooked; and per Fed. R. App. P. 35; Ninth Circuit Rule 35-1 to -3, to secure or maintain uniformity of the court's decisions, when the matter involves a question of exceptional importance, and/or when the opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

The Appellant's Brief to this Court, like his original Complaint, made detailed copyright claims and comparisons, stressed the *substantial* and *strikingly similarity* between the works, and made **nine (9) arguments** against the District Court's summary judgment. Only one (1) of these arguments concerned *access*.

This Court responded with an **unpublished memorandum** that (minus the caption page) was slightly over 2-pages in length, ignored more than seven (7) of the Appellant's arguments, focused almost exclusively on access, and only mentioned *substantial similarity* and *striking similarity* to arbitrarily declare that there was no similarity, without providing any reasoning one would expect from an Opinion.

This petition addresses five failings of this Opinion. These failings are:

1. The Opinion does **not** address over seven (7) of the Appellant's nine arguments, and only fully addresses the Appellant's final and weakest argument.

2. the District Court failed to give the Plaintiff's work **broad protection**, as reaffirmed recently in *Rentmeester v. Nike*, (9th Cir., 15-35509, July, 2017):

3. The Opinion failed to consider the doctrine of widespread dissemination;

4. District Court's failed to apply a case law standard for striking similarity;

5. The District Court failed to test for striking similarity;

6. The District's ruling is based on the falsified report of Defendant's expert Jeff Rovin's**.***

   ***NOTE: October 2016, almost 2 years after this matter went to Appeals, Jeff Rovin went on FOX News'** *The Sean Hannity Show* **to admit he was a "fixer" (paid to write false** *smear* **stories) for President Bill Clinton during the Clinton administration.**

**Argument**

I. **An aspect of the Opinion requires consideration by the full Court because (1) the Opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity; (2) it is necessary to secure or maintain uniformity of the Court's decision; (3) the proceeding involves a question of exceptional importance. <u>Also and alternatively, a panel rehearing is also appropriate regarding this aspect, because</u>: (4) a material point of fact or law was overlooked in the decision; and (5) an apparent conflict with another decision of the Court was not addressed in the opinion.**

The Appellant submitted **nine (9) arguments** against the District Court's summary judgment ruling. However, this Court's Opinion **did NOT address any part of seven (7) of these arguments**, only addressed a portion of the Appellant's first argument, and only fully addressed the Appellant's final and least compelling argument. The panel's Opinion did not so much as mention the arguments they did not address. The arguments from the Appellant's Brief which were overlooked are:

1. **(B)** The Court Did Not Apply The **Widespread Dissemination** Standards Established In L.A. Printex Indus v. Aeropostale, Inc.
**(C)** The Availability Of Plaintiff's Work On The Only Social Network For Filmmakers & Screenwriter, And Parties Engaged In The Same Market Confirm Widespread Dissemination.
**(Note: the panel addressed part (A) of Argument 1, but ignored part (B) and (C)**.

2. The Court Erred In Its Substantial Similarity Test; By Omitting L.A. Printex The Court Failed To Test "Obejective [sic] Similarities In Protectible [sic] Elements" & Failed To Give Plaintiff "Broad" Protection.

3

3.  The Court Erred In Using Dissection Analysis, (Discredited By L.A. Printex); Thus, Failed To Analyze Objective Similarities In Protectable Elements.

4.  The Order Errs As It Is Predicated On The Omission & Mistatement [sic] Of Central Facts & Claims.

5.  The Court Erred In Not Choosing A Case Law Standard To Define "Striking Similarity".

6.  The Court Erred In Its Direct Comparison Ruling.

7.  The Order Errs As It Did Not Test For "Striking Similarity"

8. The Court Erred In Granting Summary Judgment When The Credibility Of The Parties Is At Issue.

The United States Circuit Courts has the tremendous duty to address the legitimate arguments raised in the Appellate Briefs. In this case, the Court's unpublished Opinion did not fulfill its duty to address the remaining seven arguments raised by the Appellant, and failed to address the most important aspects of an eighth argument (Argument #1).

**This oversight undermined the Appellant, and threatens undermine justice throughout the Ninth, and is out of step with national procedure**, and sets a precedence that the Court can simply ignore difficult arguments, rather than giving them due consideration, or referring the them to the Supreme Court.

The Opinion also threatens to erode public confidence in this Court—which

4

is responsible for protecting U.S. intellectual property rights—because observers will assume the panel's failure to address 7 or 8 of the Appellant's arguments is an affirmation that the Court possess an inherent bias against self-represented parties.

As reported in numerous legal publications, many legal observers feel that California's big film, TV and music studios are given special consideration by California courts. The panel's unusual Opinion—which ignores most of the Appellant's central arguments—feeds into this fear and threatens to erode confidence in this Court. Without a reconsideration of this Opinion, more and more Plaintiffs, who can afford to do so, will follow the trend and move their cases out of California.

**II. Another substantial aspect of the Opinion overlooks material points of law, and creates conflicts with prior decisions of this court; thus, a rehearing is necessary to secure uniformity of this Court's decisions.**

The Opinion did NOT apply or acknowledge the concept of "Broad Protection," as advised by the Appellant and as directed by law —most recently and most notably in *Rentmeester v. Nike,* Inc., (9th Cir., 15-35509, July 11, 2017).

The Court's decision contradicts numerous prior Ninth Circuit decisions, and contradicts established precedence in the Ninth Circuit concerning "**broad protection**". The issue of broad protection was raised by the Plaintiff in his Motion

For Summary Judgment and raised again in his Appellate Brief. However, neither the District Court nor the appellate panel acknowledged or addressed this point, nor did they implement protocols or procedures for granting "broad protection" to creative works, such as the Plaintiff's screenplay (which features an Earth orbiting super-satellite city for the super rich, advanced technologies, and modern social issues projected into future settings), as directed by *Rentmeester v. Nike, Inc.*

The need to give all creative works **broad protection** was perhaps stated best in the recent decision of *Rentmeester v. Nike, Inc.*, (9th Cir., 15-35509, July 11, 2017), in which the Court explained:

> This is not to say, as Nike urges us to hold, that all photographs are entitled to only "thin" copyright protection, as is true of factual compilations. A copyrighted work is entitled to thin protection when the range of creative choices that can be made in producing the work is narrow. Mattel, 616 F.3d at 913–14. In Mattel, we noted by way of illustration that "there are only so many ways to paint a red bouncy ball on blank canvas." Id. at 914. **We contrasted that with the "gazillions of ways to make an aliens-attack movie," a work that would be entitled to "broad" protection given the much wider range of creative choices available in producing it.** Id. at 913–14. When only a narrow range of expression is possible, copyright protection is thin because the copyrighted work will contain few protectable features.

The Court's ruling in *Rentmeester v. Nike* is a clear directive to give all creative works broad protection. However, the District Court and this Court failed to do so.

6

The **U.S. Supreme Court has long recognized, supported, and utilized the concept of "broad" and/or "thick" protection,** in such cases as *Harper & Row v. Nation Enterprises*, 471 U.S. 539 (1985).

The foregoing confirms that a material point of fact or law was overlooked in the Opinion, and confirms this Court's Opinion, in this matter, is in conflict with a prior decision of this Court. Therefore, consideration by the full Court is necessary to secure and/or maintain uniformity of the Court's decisions.

**III. And in another substantial aspect of the Opinion, a material point of fact or law was overlooked, and an apparent conflict with another decision of the Court was not addressed in the Opinion; thus, consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions**

Although so advised by the Appellant's Brief, the Court's Opinion fails to apply or acknowledge the doctrine of **Widespread Dissemination**, as required by *L.A. Printex Indus v. Aeropostale* —in conflict with numerous rulings of this Court.

Part B and C of the Appellant's first argument stated:

**(B)** The Court Did Not Apply The **Widespread Dissemination** Standards Established In L.A. Printex Indus v. Aeropostale, Inc.; and
**(C)** The Availability Of Plaintiff's Work On The Only Social Network For Filmmakers & Screenwriter, And Parties Engaged In The Same Market Confirm Widespread Dissemination.

Beyond these two questions about widespread dissemination, the Appellant also dedicated substantial portion of the opening of his Brief to the definition and

legal history of "widespread dissemination" (see pp 11-13 Appellate Brief). However, the panel's Opinion failed to even mention *widespread dissemination*.

Perhaps more importantly, in this Court's unpublished Opinion, the panel failed to address the fact that *L.A. Printex Indus v. Aeropostale* (1) determined that a plaintiff can prove access using circumstantial evidence of "widespread dissemination," (2) recognized the necessity of fact-specific inquiry to determine "widespread dissemination," (3) ruled that "the evidence required to show wide dissemination will vary from case to case," and (4) the panel failed to contemplate factors such as whether both parties were engaged in the same market.

More disappointing than these oversights, the panel's Opinion addressed a general question about *access*, but that question was one that the Appellant did not raise. The panel succinctly stated:

> "We reject Briggs's **unsupported contention** that the district court applied the wrong standard for deciding whether the defendant has accessed the plaintiff's work."

This statement was not accurate or responsible. The Appellant gave clear evidence and support of his claim of widespread dissemination by the fact that his work was available on the largest social network for screenwriters in mankind's history: TriggerStreet.com, coupled with fact that his work received a large number

8

of downloads over a period of months. Therefore, the Appellant believed his work on TriggerStreet satisfied the conditions necessary for widespread dissemination.

After the Appellant properly informed this Court and the District Court of the doctrine of *widespread dissemination*, it was for the Court to assess if the Appellant satisfied its standard. But the Court did not. Nor did this Court—like the District Court—so much as mention *widespread dissemination*.

The foregoing confirms that a material point of fact or law was overlooked in the Opinion. Therefore the Opinion is in conflict with prior decisions of this Court, such as *L.A. Printex v Aeropostale*. Therefore, consideration by the full Court is necessary to secure and/or maintain uniformity of the Court's decisions.

**IV.     The panel's Opinion directly conflicts with standards, protocols and traditions among the circuit courts and the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.**

Although, in his MFSJ, the Plaintiff advised the District Court of two known case law standards for determining *striking similarity* (which have both tested and upheld), the District Court ignored the Plaintiff's citation, and applied a wholly invented Nimmer (Nimmer on Copyright) standard for assessing striking similarity which was cited by the Defendants. Argument #5, of the Plaintiff's Appellate Brief, addressed the District Court's improper application of an untested and inadmissible

standard over established case law standard. Yet again, the panel failed to address this problem, thereby upholding the improper application of the invented Nimmer standard.

The Plaintiff directed the *Court to Selle v Gibb* (1984), where "Striking Similarity" standard was first implemented, and to *Ty, Inc. v GMA Accessories* (1997).

The *Selle v. Gibb* 741 F.2d 896 (1984) standard for assessing striking similarity reads: **"...similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded."**

The *Ty, Inc. v. GMA Accessories* (7th Cir. 1997) standard for assessing striking similarity reads: **"A similarity that is so close as to be highly unlikely to have been an accident of independent creation is evidence of access… Access (and copying) may be inferred when two works are so similar to each other and not to anything in the public domain that it is likely that the creator of the second work copied the first."**

However, the District Court ignored ignored the Appellant's case law citations, and accepted the invented, untested, and inadmissible Nimmer Standard, which reads: **"At base, 'striking similarity' simply means that in human**

**experience, it is virtually impossible that the two works could have been independently created."** –Nimmer On Copyright (2005).

As one sees, the case law standards establish a high bar, but not impossible. Whereas the Nimmer standard is impossibly high, with language like: "...**in human experience, it is <u>virtually impossible</u>…**" Given this impossibly high and improper standard for establishing striking similarity, and without due broad protection, the Plaintiff was denied a proper hearing in the District Court and the Appellate Court.

This Court's acceptance and application of an invented *Nimmer* standard ABOVE established case law, and ABOVE the tested reasoning of fellow appellate judges, is in conflict with the protocols and traditions of this Circuit, other circuits, and the Supreme Court.

### V. The proceeding involves a question of exceptional importance.

In the lower court, the Plaintiff moved to disqualify the Defendants' expert witness, Jeff Rovin, due to dozens of egregious examples of fraud and falsification contained in his expert report—including commiting fraud on the Court by falsifying evidence to substantiate his own false claims, by omitting 43 words from a quote. The Appellant cited dozens of other deceits contained in Rovin's report.

However, the District Court denied the Plaintiff's motion, and allowed the

falsified witness report. The Court went on to use the falsified report as the basis of its summary judgment ruling against Appellant, generously citing the report.

The Appellant then brought this issue to this Court's attention, as the ninth argument of his Appellate Brief, filed **February 23, 2015**.

Almost 2 years AFTER the Appellant submitted his Brief to this Court, October 2016, **Jeff Rovin, the Defendant's expert witness, was invited on FOX News' for an interview on** *The Sean Hannity Show***.** During this interview **Rovin explained that he was a professional "fixer"**—a person paid to write falsified, smear stories. Rovin explained that he worked for 5 or 6 years for former President Bill Clinton**,** during Clinton's presidency. Rovin explained he was hired to write smear stories against Clinton's detractors, then publish the stories in the National Enquirer. Rovin explained that another "actor" in the Clinton administration brought him on board (see www.youtube.com/watch?v=JgOEKe8-5E4 ). Clinton's advisor during the Rovin years was Rahm Emanuel. Rahm Emanuel is the brother of Ari Emanuel. Ari Emanuel is a co-owner of Defendant MRC, and is the talent agent of Defendant Neill Blomkamp, and the talent agent of Matt Damon—star of the film at issue, *Elysium*.

A reasonable mind would deduce that the Defendants contracted Rovin to "fix" and falsify his expert report.

12

As stated earlier, the Appellant moved the District Court to exclude (or disqualify) Rovin's report, due to the extensive and flagrant fraud it contained. The motion was denied without justification. Thus, with full knowledge of this fraud, the District Court allowed the falsified report of a "fixer", and based its summary judgement ruling on Rovin's corrupt report; so much so that on the final page of the District Court's **Order Re Motions For Summary Judgment** (page 32, line 4 through line 26) the Court wrote:

> "Plaintiff seeks an order disqualifying defendants' expert **Jeff Rovin** and excluding his report. Defendants have established that **Mr. Rovin** is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. **Mr. Rovin** is knowledgeable and an expert in the area of "science-fiction genre" – and his testimony has "a reliable basis in the knowledge and experience of his discipline." Kumho Tire Co. v. Carmichael 526 U.S. 137, 148 (1999).
> 
> As such, **Mr. Rovin** cites to many previously published works to show that plot features, settings, and characters in "Butterfly Driver" are not new or original as plaintiff suggests, but reflect themes that have appeared numerous times in the past. As defendants' motion makes clear, **Mr. Rovin's** testimony supports defendants' argument that many of the plot features, themes, characters, and other features of the "Butterfly Driver" screenplay are "stock" or "generic" elements or scènes-à-faire, which are not protectable; and to support their argument that the "Butterfly Driver" screenplay and the "Elysium" film are not strikingly similar or even substantially similar.
> 
> CONCLUSION
> 
> In accordance with the foregoing, defendants' motion for summary judgment is GRANTED, and plaintiff's motion is DENIED. In addition, plaintiff's motion to disqualify defendants' expert Jeff Rovin is DENIED.
> IT IS SO ORDERED.

Dated: October 3, 2014
PHYLLIS J. HAMILTON United States District Judge"

The District Court never mentioned "fraud" or "falsification", even as the District Court discussed the Plaintiff's motion to dismiss Rovin (based on fraud and falsification). Thus, the District Court allowed the falsified report of a *fixer*.

If this Court allows a decision that is knowingly based on the falsified expert report of a self-proclaimed "*fixer*", confidence in this Court will permanently suffer, and the rights of American imagineers and innovators will be further compromised. This is a matter of exceptional importance.

## CONCLUSION

For the foregoing reasons, Appellant Steve Wilson Briggs respectfully request this Court grant this petition for an en banc rehearing, or a panel rehearing.

Dated: March 13, 2018

Respectfully submitted,

/s/ Steve Wilson Briggs
Plaintiff, In Propria Persona

As required, the panel's decision, which this petition challenges, is attached.